[Civ. No. 16882. Second Dist., Div. One. May 16, 1949.]

CALIFORNIA TRUST COMPANY, as Special Administrator, etc., Appellant, v. ROBERT S. ANDERSON et al., Respondents.

Byron O. Smith and Stephens, Jones & La Fever for Appellant.

Robert S. Anderson, in pro. per., and Werner O. Graf for Respondents.

DORAN, J.—Plaintiff trust company, representing the estate of Jessie P. Lockert, deceased, instituted the within action against decedent's brother, Robert S. Anderson, and one Quincy Cass, for the purpose of quieting title to and impressing a trust upon an undivided one-half interest in certain corporate stocks. As set forth in the complaint, the stock certificates in question stood "in the combined names of Minnie A. Anderson (mother of Jessie P. Lockert and Robert S. Anderson), Jessie P. Lockert (now deceased) and Robert S. Anderson (defendant herein) as joint tenants with rights of survivorship, and not as tenants in common."

On February 3, 1946, a written instrument, referred to in the briefs as the "Brother-Sister Contract," was executed by Jessie P. Lockert and Robert S. Anderson, brother and sister, reading as follows:

"This is a MEMORANDUM OF UNDERSTANDING AND AGREEMENT by and between the undersigned Robert S. Anderson and Jessie P. Lockert, brother and sister, in relation to the personal estate of their mother, Mrs. Minnie A. Anderson, widow, all residents of the City of Los Angeles, State of California.

"Said estate consists of shares of capital stock in sundry corporations and money deposits in bank.

"The estate originated in the bequest by will of Charles H. Anderson, our father, deceased in October, 1932, whose will provided, as follows:

" 'I give, devise and bequeath to my beloved wife, Minnie A. Anderson, all of the estate of which I may die possessed both real and personal wheresoever situated for her use and benefit during her life, and at the death of my said wife all the remainder of said estate shall be divided equally between my daughter, Jessie P. Anderson, and my son, Robert S. Anderson, share and share alike.'

"In accordance with the terms, letter and spirit of said bequest, and notwithstanding the estate is now partly in monies in bank, but mainly represented by certificates of capital stocks issued in joint tenancy in the names of Minnie A. Anderson, Jessie P. Lockert, and Robert S. Anderson; and that said certificates are in the possession and custody of said Robert S. Anderson solely as representative and agent of his mother's estate; and that likewise he has authority jointly with her to receive, deposit in bank, and disburse therefrom for her account, in her name, all monies derived from her estate:

"It is hereby agreed that in the event our mother shall pre-

decease both of us, all her estate left at such time shall be, as soon as legally possible, divided, share and share alike between us."

It appears from the pleadings as summarized in appellant's brief, that the mother, Minnie A. Anderson "died on March 10, 1947, slightly over a year subsequent to the date of the Brother-Sister Contract. . . . Jessie P. Lockert died on May 27, 1947, two months and 24 days after the death of the mother. . . . At the time of the mother's death . . . there was, and ever since said date there have been, standing in the names of Minnie A. Anderson, Jessie P. Lockert and Robert S. Anderson, as joint tenants with right of survivorship, the stocks (here in question). . . . Robert S. Anderson has had possession of the certificates representing said stocks, either in person or through his agent, Quincy Cass, ever since the death of the mother." The said Quincy Cass, made a defendant because in actual possession of the stock certificates, filed a disclaimer, alleging that said stocks were held solely as agent for the other defendant, Robert S. Anderson. It appears that Anderson had been adjudged incompetent and the answer was filed by a guardian.

The parties stipulated that the action might be set for trial on the short cause calendar, and "That at the trial of the said action no testimony will be taken, but the action will be submitted on the pleadings and argument of counsel." Pursuant thereto, after argument the cause was submitted for decision without any evidence having been offered. The trial court found in favor of plaintiff (appellant herein). Thereafter, defendant's (respondent's) motion for a new trial on the stated grounds of "Insufficiency of evidence to justify the decision," and "That the decision of the Court is against law," was granted. The plaintiff has appealed from the order granting a new trial.

Appellant's brief presents "two alternate theories concerning the purposes and effect of the Brother-Sister Contract." The first theory is "that the record title to the corporate shares was taken in the names of the three persons not with any intent to create a joint tenancy tenure with all its incidents, but solely as a measure deemed convenient . . . and (b) that the Brother-Sister Contract was drawn and executed to evidence the true status." The second theory is that "even though the corporate shares had been taken in the name of the three persons with the intent to create therein a joint tenancy with all its legal incidents, the contract operated as

a mutual waiver by the brother and sister of their respective rights of survivorship—a waiver, under the authorities hereinafter cited, effective to break up the joint tenancy between them and establish a tenancy in common.''

The respondent's position is that the trial court was justified in granting a new trial and nullifying the original judgment in plaintiff's favor, for the reason that there is no evidence showing that the stocks in question were at any time a part of the mother's estate or a part of the estate of Jessie P. Lockert; that the brother and sister contract in no way affected the legal status of the stocks held in joint tenancy, which, upon the deaths of the mother and daughter, became the sole property of the surviving joint tenant, Robert S. Anderson, defendant herein.

The original conclusion of the trial court ''That the brother-sister agreement . . . destroyed the right of survivorship between said parties, and that from and after the death of Minnie A. Anderson (the mother) on March 10, 1947, Jessie P. Lockert and Robert S. Anderson were the owners in equal shares, as tenants in common and not as joint tenants, of the stocks listed,'' finds justification both in law and under the undisputed facts of the instant case. Therefore the subsequent granting of a new trial from which order the present appeal is taken, was improper.

That joint tenants may by agreement change the nature of the estate from that of joint tenancy with rights of survivorship to a tenancy in common carrying no survivorship rights, cannot be doubted. ''It has been held,'' says the court in *Hammond* v. *McArthur,* 30 Cal.2d 512, 515 [183 P.2d 1], ''that an agreement between two joint tenants whereby they agree to a different disposition of the property than that of survivorship terminates the relationship,'' citing *McDonald* v. *Morley,* 15 Cal.2d 409, 412 [101 P.2d 690, 129 A.L.R. 810]. In the McDonald case, it was said ''At the time when Mr. and Mrs. McDonald made their agreement, they held title to the property 'as joint tenants.' Such an estate requires unity of interest, unity of title, unity of time, and unity of possession. . . . A distinguishing incident of it is the right of survivorship. . . . But by their contract the parties specifically provided that if either one of them died, the interest of that one should not go to the survivor but to the daughter. This is entirely inconsistent with an estate in joint tenancy, which was thereby terminated. . . . Thereafter, Mr. and Mrs. McDonald were tenants in common with separate

descendible interests.'' The applicability of the above mentioned decisions is questioned in the respondent's brief, which points out the factual differences from the instant controversy. ''In the case at bar,'' respondent avers, ''there is no provision contained in the brother-sister contract that if either or one of them should die, the interest of that one should not go to the survivor.''

██ It is doubtless true that the brother-sister agreement could have been couched in more definite and appropriate terms. The purpose which the signatory parties had in mind, however, appears to be clear enough, and is definitely stated in the agreement. By its own terms, the document is ''a MEMORANDUM OF UNDERSTANDING AND AGREEMENT'' between brother and sister, concerning what is described as ''the personal estate of their mother,'' consisting of ''shares of capital stock,'' etc. The agreement further identifies the so-called ''estate'' as having ''originated in the bequest by will of Charles H. Anderson, our father,'' which will left all property to Minnie A. Anderson (the mother) ''for her use and benefit during her life, and at the death of my said wife all the remainder of said estate shall be divided equally between (the brother and sister) . . . share and share alike.''

The exact purpose of the brother-sister agreement is none other than that of insuring that the ''estate'' originating in the father's will, described as ''mainly represented by certificates of capital stocks issued in joint tenancy in the names of Minnie A. Anderson, Jessie P. Lockert, and Robert S. Anderson; . . . in the possession and custody of Robert S. Anderson solely as the representative and agent of his mother's estate,'' should be handled ''In accordance with the terms, letter and spirit of said bequest.'' Notwithstanding the fact that nominally such stocks were standing in the joint names of the three parties interested with rights of survivorship, the brother and sister specifically ''agreed that in the event our mother shall predecease both of us, all her estate left at such time shall be, as soon as legally possible, divided *share and share alike between us.*'' (Italics added.) In other words, since the father's will had not provided for a joint tenancy between the two children with right of survivorship, but directed that the estate should, at the mother's death, be divided ''share and share alike,'' it was the intention of the brother and sister that this ''share and share alike'' arrangement should prevail regardless of the nominal joint tenancy aspect of the stock certificates. The mother did pre-

decease the two children about one year after execution of the brother-sister contract; some two months later the sister, Jessie P. Lockert died. The brother-sister agreement had not been revoked or modified in any way.

■ Respondent's contention that the stocks here in question are not sufficiently identified with those mentioned in the brother-sister agreement, is without substantial merit. The stocks held in joint tenancy, their derivation and the facts connected therewith, were specifically described in the complaint. In the answer "this defendant admits that he has been in possession of *said stock certificates,* either personally or through his agent, since the death of Minnie A. Anderson and that no change was made in the registered ownership of said stock certificates prior to the death of Jessie P. Lockert, nor has any change in the registered ownership of said stock certificates been made to the date of filing this answer." (Italics added.) The trial court's finding that "said stocks are part of the property which is the subject matter of the agreement" cannot be said to have been an unreasonable deduction.

■ It is further insisted by the respondent that it does not appear that the mother, Minnie A. Anderson, left any "estate" to which the brother-sister agreement could apply. It is to be noted, however, that this agreement was executed during the mother's lifetime; that under the father's will the mother had but a life estate, the remainder going to the brother and sister, "share and share alike." Obviously, all these facts were known to the parties when the brother-sister agreement was signed. Under the circumstances, therefore, it is but a reasonable inference that the term "estate" was not employed in the technical, legal sense contended for by respondent, as meaning a probate "estate" left by the mother, but was rather used in a general sense to designate the "certificates of capital stock held in joint tenancy," referred to in the agreement.

According to Webster's New International Dictionary, the word "estate" may mean "property," or "The degree, quality, nature and extent of one's interest in, or ownership" of property, real or personal. The very purpose of the brother-sister agreement as therein expressed, was to determine and set at rest "the degree, quality, nature and extent" of the children's interests in the stocks which, for convenience or other reason, had been nominally issued in joint tenancy. The respondent's contentions are all untenable; the trial court's

original decision properly effectuates the obvious intent expressed in the brother-sister agreement. The motion for a new trial was therefore improperly granted.

The order appealed from is reversed.

White, P. J., and Drapeau, J., concurred.

A petition for a rehearing was denied June 2, 1949, and respondents' petition for a hearing by the Supreme Court was denied July 14, 1949. Carter, J., and Schauer, J., voted for a hearing.