[Civ. No. 17685.   Second Dist., Div. Two.   May 15, 1951.]

L. A. GAMMILL, as Administrator, etc., Respondent, v. JOE G. NUNES et al., Appellants.

Jack H. Glines and Marion A. Smith for Appellants.

Gene M. Harris, Preisker, Goble & Twitchell for Respondent.

WILSON, J.—Acting to establish a resulting trust in, and to quiet title to, an undivided two-thirds interest in approximately 275 acres of land in Santa Barbara County. Judgment having been rendered in favor of plaintiff, defendants are appealing upon the sole ground that the evidence does not support the findings.

Plaintiff is the administrator of the estate of John Souza Mottos, deceased. The trial court found that during the year 1947 decedent orally negotiated with defendants concerning the purchase of a parcel of farming land near the town of Casmalia; during the month of June, 1947, these negotiations culminated in the making of an offer by decedent and defendants to the owner of the land for its purchase for the sum of $18,000; the offer was accepted and to consummate the sale an escrow was opened on June 28, 1947; the owner of the property having requested that the entire transaction be handled in the name of one person, it was orally agreed by the parties that their dealings, including the escrow and the deed to the property should all be in the name of defendants as a matter of convenience only; pursuant to an oral agreement between decedent and defendants, decedent paid $12,000 of the purchase price and defendants paid $6,000; it was further orally agreed that defendants would take title to the property in their names, holding decedent's interest in trust, and at a future date they would convey to decedent title to his proportionate share; the deed to the property in defendants' names was recorded on October 20, 1947; prior to the date of delivery of the deed decedent became seriously ill and was removed to a hospital where he died on December 19, 1947; decedent's interest in the property is in proportion to the amount paid on the purchase price; defendants hold decedent's undivided two-thirds interest in the property in trust.

The court further found that it is not true that decedent agreed to give defendants the sum of $12,000; it is not true that while at the Santa Maria hospital decedent informed defendants the property belonged to them and they could keep it if he should die; decedent did not at any time prior to his death give or convey to defendants his undivided two-thirds interest; decedent had a survey made of a portion of

the property but he did not agree with defendants to accept the portion which he had surveyed as his share of the property in exchange or in consideration for the sum of $12,000 which he had paid on the purchase price and he did not agree that defendants should have the remainder of the property, other than the portion decedent had surveyed, in exchange or consideration for the $6,000 which they had paid on the purchase price.

Defendants contend the evidence does not support the findings of the court that (1) they hold in trust for decedent an undivided two-thirds interest in the whole of the property; (2) decedent did not surrender his interest in the property to them, effective upon his death.

There is no dispute about the fact that decedent paid $12,000 of the purchase price and defendants paid $6,000. Defendants admit that under section 853 of the Civil Code "When a transfer of real property is made to one person, and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made." They assert, however, that this presumption is rebutted since the following evidence establishes that decedent and defendants intended to acquire separate parcels of the property: In 1945 decedent endeavored to purchase a portion of the property but the owner refused to divide the tract and insisted that it be sold in one piece to one purchaser; thereafter he succeeded in interesting defendants in buying the balance of the property; decedent requested that the owner survey the land for two parcels which the owner refused to do; prior to the close of the escrow decedent had a portion of the property south of the road, containing approximately 126 acres, surveyed and built a fence along the line separating the two parcels; defendants built a fence along their line and subsoiled the portion north of the road but did not subsoil the 126 acres; decedent had his hut on the 126-acre parcel; the parcels were divided by oral agreement of the parties.

It is defendants' contention that they held in trust only the 126 acres selected by decedent and that decedent surrendered his interest in that portion to defendants when he stated to them, while he was in the hospital, "If I die the property belong to you. I am not going to take anything when I die, just six feet, that's all."

There is evidence that immediately after decedent's death

defendants declared they had purchased the property with their own money and decedent had not put any money in it. Later defendants admitted they owned one third and decedent owned two thirds. At that time they also stated there was an agreement between them that decedent was to have the 126 acres he had had surveyed, which they agreed was worth $6,000, and defendants were to have the remainder of the ranch, which was worth $12,000; that they were going to give decedent a deed to the 126 acres and a note and mortgage for $6,000 to cover their share but decedent became ill and they never concluded their arrangements. Still later defendants denied they owed decedent $6,000 and asserted there was no agreement between the parties.

■ The presumption declared by section 853 of the Civil Code is rebuttable, the question finally being as to the intention of the parties at the time. (*Owings* v. *Laugharn,* 53 Cal. App.2d 789, 792 [128 P.2d 114].) Defendants testified in their deposition and at the time of trial that there was no agreement between the parties as to the division of the property or the amount the respective parties would pay for each parcel. They testified that decedent paid $12,000 and they paid $6,000 of the purchase price; that when a division would be made of the property at a future time decedent wanted to keep the 126 acres and they were to keep the rest. They were repeatedly asked what their agreement was with reference to the division and the amount each would pay for the portion he kept and they consistently replied that there was no agreement.

■ While it appears from the evidence that decedent and defendants intended at some future time to divide their interests the record supports the finding that at the time of decedent's death no agreement had been reached between them. There is no evidence except defendants' testimony that it was the intention of the parties that decedent was to pay $12,000 for the 126-acre parcel which was worth approximately $6,000 and defendants were to retain 150 acres which was worth $12,000 for their investment of $6,000. The mere statement of such a proposition is sufficient to arouse suspicion of its authenticity. The court upon considering the conflicting statements made by defendants, their testimony at the time of trial, their interest in the outcome and the fact that the lips of decedent were sealed by death, and weighing these factors against the presumption of section 853, reached the conclusion that the presumption was not overcome. ■ This

conclusion, which is one of fact, is binding upon us. (*Owings* v. *Laugharn, supra.*)

The only evidence in support of defendants' contention that decedent surrendered his interest in the property to them is their testimony concerning his alleged statement to them in the hospital that ''the property is in your name. If I die you can keep it.'' The only witness other than defendants who they claim was present at the time died prior to the trial. The trial court found that decedent did not make such a statement. Testimony concerning oral declarations alleged to have been made by a decedent against interest, unless corroborated by satisfactory evidence, is the weakest of testimony that can be produced. (*Kent* v. *First Trust & Sav. Bank,* 101 Cal.App.2d 361, 371 [225 P.2d 625] ; *Estate of Emerson,* 175 Cal. 724, 728, 729 [167 P. 149].)

The court was not bound to believe the testimony of defendants, even though it was uncontradicted, and in passing on their credibility and the weight to be given their testimony the trier of fact is entitled to consider their interest in the result of the case, their motives, the manner in which they testified and the contradictions appearing in the evidence. (*Huth* v. *Katz,* 30 Cal.2d 605, 609 [184 P.2d 521].)

Judgment affirmed.

Moore, P. J., and McComb, J., concurred.