[Civ. No. 19900. Second Dist., Div. Two. Apr. 14, 1954.]

COURTLAND V. EMDEN et al., Respondents, v. EDITH VERDI, Appellant.

Edward Mosk for Appellant.

George A. Elstein for Respondents.

FOX, J.—Edith Verdi appeals from that portion of the judgment decreeing that she held title to certain real property in trust for the decedent, Victor C. Emden, his heirs and devisees.

The property here in controversy is located on Hollister Avenue, in Santa Monica, and consists of a two-story residence on the front of the lot, with separate living accommodations on each floor, and two other residences in the rear. Decedent purchased this property in August, 1943. Title was placed in the name of appellant Verdi, who was not related to him. Decedent, however, paid all the taxes and repairs on the property. He took out insurance on the property in May, 1945, in his own name. Appellant Verdi occupied the downstairs living quarters in the two-story house. The other rental units were listed under the Office of Price Administration by Mr. Emden. He passed away in August, 1945, approximately two years after he purchased the property.

In 1933, when Emden was in his late fifties, he married Edith's sister, Sally, who was in her early twenties. In 1940 Sally informed Emden that she was in love with another man. Emden thereupon established residence in Nevada and secured a divorce early in 1941. Sally married a month later in Hawaii. They remained, however, on cordial terms. During Emden's marriage a close relationship had developed between him and her family. This relationship continued after Emden's and Sally's separation and divorce; in fact, Edith and a friend of hers accompanied him to Nevada when he was in search of marital freedom. He paid their expenses. Thereafter, when Edith and her husband were divorced, Emden paid the rent on the premises occupied by Edith and

her mother at two locations. Edith and her husband remarried in 1946 after Emden's death. In the meantime Emden spent considerable time with Edith and her family. She acted as his chauffeur, for which he paid her $20 per week and expenses. He also paid her transportation to New York in 1944 to visit a sister who was ill.

In the summer of 1943, according to appellant, she and her son, her mother and Sally's adopted son, were living together. The landlady objected to the children. The boys were sent to a camp. It was then, said appellant, that Emden told her to look around and see if she could find a house that would be large enough for the four of them; that he would buy it for her so they could all be together. The result was the purchase by Emden of the Hollister Avenue property. Testimony was given by friends of appellant of conversations with Emden wherein he stated he was going to buy a house for Edith, or indicating he had bought a house for her. She was introduced to tenants by Emden as their "new landlady." The rent was thereupon paid to her.

Shortly before the death of Emden, Mr. Jones, an attorney, went to Emden's home to prepare his will. At that time Emden told him that he had purchased the Hollister Avenue property and placed it in Edith's name and that he had a deed back from Edith which was in his brief case at the head of his bed. Mr. Jones never saw such deed and no such instrument has ever been produced. He also informed Mr. Jones, among other things, that Edith had $50,000 in cashier's checks belonging to him, and asked Mr. Jones to secure them from her. He told Mr. Jones to tell her anything to get these checks—that Emden was going to use them to open up a joint account with her, and that he would give to Attorney Jones her deed to him of the Hollister Avenue property to be destroyed. The next day Mr. Jones received a letter from Emden which he had dictated to his nurse, in which he reiterated the same things he had already related to Mr. Jones in their previous conference. The latter secured the return of the cashier's checks without telling Edith that Emden had said he would have her deed to him of the Hollister Avenue property destroyed if she would return the checks.

Although stated under different captions, the burden of appellant's argument is that the evidence does not support the findings and judgment. With her contention we cannot agree.

The evidence is undisputed that Emden paid the entire purchase price for the property, and that title was taken in the name of appellant. In such circumstances a trust is presumed to result in favor of the one who furnishes the consideration. (*Rowland* v. *Clark*, 91 Cal.App.2d 880, 882-883 [206 P.2d 59]; *Goes* v. *Perry*, 18 Cal.2d 373, 379 [115 P.2d 441]; *Bradley* v. *Duty*, 73 Cal.App.2d 522, 526 [166 P.2d 914]; *Norman* v. *Burks*, 93 Cal.App.2d 687, 691 [209 P.2d 815]; Civ. Code, § 853.) This is because it is the natural presumption in such a case that it was the intention of the parties that the ostensible purchaser should acquire and hold the title to the property for the one who furnished the purchase price. (*Lezinsky* v. *Mason Malt W. D. Co.*, 185 Cal. 240, 251 [196 P. 884].) Such a presumption is evidence to be weighed by the trial court along with all the other facts in the case. (*Gammill* v. *Nunes*, 104 Cal.App.2d 185, 188 [231 P.2d 86]; *Estate of Kromrey*, 98 Cal.App.2d 639, 646 [220 P.2d 805].) In support of the court's decision are the further facts that (1) Emden paid the taxes; (2) took care of the repairs to the property; (3) renewed the insurance in his own name; and (4) registered the rental units with O.P.A. Appellant challenges the last item. She says she does not know whether the units were registered. This makes it clear that she did not register them. The presumption is that the law was complied with. Furthermore, decedent took care of other business matters relating to this property and told tenants appellant was the new landlady. It is therefore a reasonable inference that decedent did take care of registering the rental units with the O.P.A. There is also an inference that Emden believed appellant understood that she was holding title for him. This grows out of his request to his attorney that he tell her he would have her deed reconveying the property to him destroyed, if this were necessary in order to get the cashier's checks. Emden was desperate to recover these checks for he told Mr. Jones to tell her anything to get them. It certainly would not have facilitated the attorney's mission for him to convey Emden's message to appellant if Emden had even a suspicion that she considered herself owner of the property. The inference is clear that decedent did not consider appellant the owner and did not believe that appellant so considered herself. The trial court could reasonably have concluded this situation had existed from the inception of the transaction—that a gift had never been intended—for there

is nothing to suggest that appellant had given up any interest she had acquired. It should also be noted that the parties were not related, marriage does not appear to have been contemplated, and a meretricious relation is not suggested. These facts and circumstances and the reasonable inferences to be drawn therefrom amply support the findings and judgment.

Appellant argues that ''the presumption of a resulting trust is rebutted by presentation of evidence showing a contrary intent.'' ▆ Mr. Emden's intention when he caused title to be conveyed to Edith was a question of fact for the trial court. After hearing all the evidence, observing the witnesses, taking into consideration their relation to the transaction and to the appellant, their interest in the case, and evaluating their testimony and then resolving the conflicts in the evidence and the inferences to be drawn therefrom, the trial judge has found adversely to appellant on the question of the intent with which this conveyance to appellant was made. Such finding has substantial evidentiary support and therefore it is binding on appeal.

Appellant's next point is that ''where party paying purchase price does so to provide home for another, presumption of trust will not arise.'' First of all, this proposition is lacking in factual foundation. While Edith testified that decedent told her he would buy a home for her so all the family could be together, the trial court may not have believed her in view of her interest. The judge may have for like reasons disbelieved Sally and her mother and the friends of appellant who supported her on this point. The court may well have concluded decedent intended only to provide her a home for the time being in view of the housing shortage. This conclusion finds inferential support from the fact that there were three rental units on this property. It does not appear there was ever any suggestion that decedent would provide her with a home and an income.

Appellant relies on *Browning* v. *Evans*, 217 Cal. 585 [20 P.2d 681], in support of her last proposition. It does not, however, go to the extent she claims. The court there recognizes the general rule that ''a presumption of a resulting trust ordinarily arises where property is purchased with funds of one person and title taken in the name of another (p. 591).'' It is then pointed out that this presumption may be overcome where it is established that the party paying the purchase price did so for the express purpose of providing a

home for the person in whose name title is taken—that title so taken is "some evidence that a gift of the fee was intended." Appellant insists that the Browning case is in point and therefore controlling here. True, there is a close parallel between the story of the respective plaintiffs in the two cases, but in the Browning case the trial court believed plaintiff's evidence and accordingly found that a gift was intended and no trust resulted. On appeal it was simply held that the evidence was sufficient to support the finding of a gift of the property and to overcome the presumption of a resulting trust. Hence the judgment was affirmed. Here, however, the trial court has not accepted the evidence on behalf of appellant that a gift was intended and has found there was a resulting trust. She now seeks a reversal of that judgment. Obviously the Browning case cannot be applicable in such circumstances. What appellant is really urging upon us here is that we reevaluate the credibility of the witnesses, reweigh the evidence and the inferences therefrom, and decide the factual issue in her favor. Then the Browning case would be applicable. However, under firmly established principles, an appellate court may not thus invade the fact-finding prerogative of the trial judge.

Appellant's next point is that "Where a close relationship exists, a gift will be presumed." This proposition overstates the effect of a close relationship. The principle is that a close relationship may be of such character as to indicate the parties actually intended a gift and thus sufficient to overcome the presumption of a resulting trust. Appellant cites two cases which illustrate this principle and in which it was found the closeness of the relationship established an intent to make a gift. In these cases—*Porter* v. *Douglass*, 7 Cal.App. 429 [94 P. 591], and *Creasman* v. *Boyle*, 31 Wn.2d 345 [196 P.2d 835],—a meretricious relationship was shown. Here, however, the evidence of the closeness of the relationship between decedent and Edith and her family was not such as to require a finding, as a matter of law, that a gift was intended.

 Appellant's final argument is that "The court erred in admitting testimony of alleged statements made by the decedent shortly before his death." Reference is here made to the conversation between decedent and his attorney and the letter dictated by decedent to his nurse and sent to Mr. Jones covering essentially the matters discussed by them in their previous conference. Objection is made particularly

to decedent's reference to a deed from appellant to him conveying the property here in controversy and his direction to Mr. Jones to tell appellant, if such were necessary to secure the cashier's checks, that he would cause the destruction of the deed upon delivery of the checks. This testimony was not admitted for the purpose of establishing the existence of such a deed, but for the purpose, as the trial judge ably pointed out, of throwing light upon the intention with which the conveyance was caused to be made to Edith by Emden— "whether or not he intended that the title pass to" her or that she was "taking it solely for convenience and in trust for him." For such purpose this testimony was admissible in evidence as an exception to the hearsay rule and it is immaterial that such statements were self-serving. (*Whitlow* v. *Durst,* 20 Cal.2d 523, 524 [127 P.2d 530] ; *Hansen* v. *Bear Film Co., Inc.,* 28 Cal.2d 154, 174 [168 P.2d 946] ; *Dinneen* v. *Younger,* 57 Cal.App.2d 200, 207 [134 P.2d 323] ; *McNulty* v. *Copp,* 91 Cal.App.2d 484, 489 [205 P.2d 438] ; *Kelly* v. *Bank of America,* 112 Cal.App.2d 388, 394 [246 P.2d 92].)

Affirmed.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing was denied May 6, 1954.