129 Cal.App.2d 778 (1954)
STEPHEN LOMBARDI et al., Appellants,
v.
LORETTA TRANCHINA, as Executrix, etc., et al., Respondents.
Civ. No. 16182. 
California Court of Appeals. First Dist., Div. One. 
Dec. 27, 1954.
 Ferrari & Ferrari for Appellants.
 James L. Minnis, Jr. and Cosgriff, Carr, McClellan & Ingersoll for Respondents.
 WOOD (Fred B.), J.
 Question: Does the evidence support the finding that Candida Lombardi (mother of the plaintiffs) owned the real property in suit at the time of her death and that neither Candida nor the defendants (the executrix of her will and the devisees of the property) at any time held the property in trust for the plaintiffs?
 Plaintiffs Stephen and August Lombardi conveyed this property to Candida in August, 1943. In support of their claim that Candida, in consideration of the transfer, orally agreed to hold it in trust for them, Stephen testified: The property was purchased in 1924 with money he and his brother August had saved, but was taken in the name of the mother because August was not yet of age and could not borrow money; that his father, Sebastian, paid off the purchase money loan with rentals received from the property; by 1933 the parents were in financial difficulties owing to the depression, so, the property belonging to him and his brother, he took it up with them, telling them he wanted it because "it belonged to us," and the parents conveyed it by deed to him and his brother, and "it stayed in our name for about 10 years." After the father's death (in January, 1941) the mother told the boys she wanted the property back in her name. It dragged along for quite a while and then she started putting "pressure" on them. Stephen said to her, "the property belongs to us" and she replied, "well, turn it over to me, and then when the proper time comes, I will see that you get what you have coming." She was going to use the income as long as she had the property and then she was going to *780 turn the property back to the boys later on. And so they deeded it to her. Stephen's is the only testimony to this conversation, for there was no third person present and Candida is no longer living. After they deeded the property to Candida, Stephen saw her from time to time but had no further discussions in regard to the agreement he testified to. They never discussed it again. He frankly conceded that from the acquisition of the property in 1924 Sebastian managed the property, collecting the rents, paying taxes and making improvements, until his death in 1941, and that thereafter until her death in 1951 Candida exercised like sole dominion over it.
 Plaintiffs claim that this testimony of Stephen's is uncontradicted, cannot be disregarded, and, therefore, requires a reversal of the judgment. We do not so view it.
 [1] It is apparent that the trial judge, whose function it was to evaluate the testimony, disbelieved Stephen's account of the transaction. As trier of the fact, he was not required to accept as true the testimony of a witness even if it were uncontradicted. (Jordan v. O'Connor, 99 Cal.App.2d 632, 641 [222 P.2d 322]; Gammill v. Nunes, 104 Cal.App.2d 185, 189 [231 P.2d 86]; Spaulding v. Jones, 117 Cal.App.2d 541, 548 [256 P.2d 637].) [2] When a trial court has declared a deed " '... to be just what it purports to be, an appellant ... can not expect a reversal unless the evidence is almost overwhelmingly the other way ...' " (Spaulding v. Jones, supra, 117 Cal.App.2d 541, 545.) In such a case the determination of the trial court "in favor of either party upon conflicting or contradictory evidence is not open to review on appeal." (Beeler v. American Trust Co., 24 Cal.2d 1, 7 [147 P.2d 583].) [3] We must remember also that "[t]estimony concerning oral declarations alleged to have been made by a decedent against interest, unless corroborated by satisfactory evidence, is the weakest of testimony that can be produced." (Gammill v. Nunes, supra, 104 Cal.App.2d 185, 189.)
 Evidence tending to show the creation of a trust is not as clear and convincing as it appears to the plaintiffs.
 [4] The youthfulness of the plaintiffs in 1924 (Stephen was just 21 and August not yet 21) is a circumstance suggestive of doubt whether they had accumulated funds sufficient to be the real purchasers of the property. Another explanation than August's minority is potentially available as the reason for taking the property in Candida's sole name. *781 A bank loan of $1,300, secured by mortgage, was taken at the time of purchase. It happened that Sebastian was a director of the lending bank and the bank had a policy of not lending to its officers. Then, in 1928, Candida effected another loan of $3,000 from the same bank, using the proceeds to retire the remainder of the first loan and pay off another loan, depositing the balance ($1,475) in Sebastian's checking account at the bank. That is consonant with the idea that Sebastian and Candida, not the boys, were the purchasers, taking title in Candida's name the more conveniently to obtain a purchase money loan.
 When Candida and Sebastian conveyed to the boys it may have been for their own protection, not for the purpose of vesting legal title in the real owners. The cashier of their bank testified that in 1933 and 1934 Sebastian was having a hard time getting his obligations together and was being pressed; he was land poor; his personal property and some of his land was encumbered. Some of this was hearsay testimony but plaintiffs interposed no objection to it.
 These circumstances, coupled with the continuous exercise of dominion by Sebastian and Candida, tend to cast doubt upon the claim that this property belonged to the boys from the beginning.
 Stephen's testimony was not entirely free from inconsistencies. Asked upon direct examination if his mother told him (in 1943) why she needed the property, Stephen said: She had been receiving the rent and she was going to use the income as long as she had the property, was going to use the income for the purpose of having it for living expenses. Later, upon cross- examination, asked what reason Candida had for wanting this property in her name if she thought it belonged to Stephen and August, Stephen answered: "That I can't say. She had the income from the property right along. Q. She didn't give any reason to you at all? A. No, she didn't."
 There is evidence of a controversy between the boys on the one hand and their mother and sisters on the other during the probate of the father's estate. (See opinion by Mr. Justice Bray of this court in Estate of Lombardi, 128 Cal.App.2d 606 at 608 [276 P.2d 67], tried at the same time and upon the same record as the instant case.) Yet, when asked "did you ever have any disagreement with your mother with regard to the handling of the properties for her, or any other subject?" Stephen answered "No sir. I am *782 50 years old. I have never had a word with my mother." Then the following ensued: "The Court: Not even when these properties that belonged to you were put in the estate of your father? The Witness: I never had no words with her, no. I just told her that it didn't belong in the estate. It belonged to us. The Court: What did she say? The Witness: I never had no harsh words with her. The Court: What did she say when you told her it didn't belong to the estate? The Witness: She let it go that way and we relinquished our 12th interest. She turned over the 40 acres voluntarily herself. We didn't ask for it."
 The parties have discussed at some length the question whether the evidence demonstrates the existence of a fiduciary relationship between the plaintiff and Candida, as a basis for a constructive trust in favor of plaintiffs in the property conveyed to her in 1943. Our reading of the record convinces us that there is evidence to support an implied finding that there was no such relationship at the time in question. [5] However, we do not hold that such a relationship is a prerequisite to the creation of such a trust. In Steinberger v. Steinberger, 60 Cal.App.2d 116, 119-121 [140 P.2d 31], this court, in an opinion by Presiding Justice Peters, reviewed the California authorities and concluded that in this state "a constructive trust arises and will be enforced to compel restitution upon violation of the oral promise" to reconvey, regardless of the existence of a confidential relationship. (P. 120. See also Orella v. Johnson, 38 Cal.2d 693, 697- 698 [242 P.2d 5].) [fn. *] Here the evidence supports the finding that Candida made no express promise to reconvey.
 The portion of the judgment appealed from is affirmed.
 Peters, P. J., and Bray, J., concurred.
NOTES
[fn. *] *. Mazzera v. Wolf, 30 Cal.2d 531 [183 P.2d 649], cited by defendant, is not applicable. It involved an oral agreement to join in the purchase of land but was not a case in which the purchase price was paid by one person, in whole or in part, and the title was taken in the name of another. The defendant, who took title, paid the entire purchase price; plaintiff paid none of it.