[Civ. No. 22073.   Second Dist., Div. One.   May 28, 1957.]

Estate of NAOMI E. MARSH, Deceased. JOHN S. MARSH, as Administrator, etc., Appellant, v. JAMES L. HUGHES, Respondent.

Neil D. Heily for Appellant.

Gilligan & Pratt, John A. Gilligan and George H. Pratt for Respondent.

DRAPEAU, J. pro tem.*—■ Naomi and John Marsh were married in 1942. She had a son by a former marriage.

In the same year Naomi's aunt died, leaving a will by which Naomi was paid approximately $80,000. She got the first installment of $11,000 from her aunt's estate in 1944.

In 1943 Mr. and Mrs. Marsh contracted to purchase a motel in Hollywood Beach, in Ventura County, California. The contract provided that they were to take title as joint tenants. The purchase price was to be $17,000; $1,000 down, and the balance in installments of $250 a month. They borrowed the $1,000 from the attorney for the executrix of the aunt's estate, and Naomi paid that money back out of her inheritance. They later borrowed $4,000 from Naomi's relatives, and applied that money too to the purchase price of the motel. And Naomi paid that money back also out of her inheritance.

Earnings from the motel paid the balance of the purchase price. Mr. Marsh took care of the property, but did very little work there. There were 12 units that were rented all the time.

---

*Assigned by Chairman of Judicial Council.

Money from the aunt's estate and from the motel was invested in several more parcels of real property. With the exception of one item of real property listed in the inventory of the value of $600, the deeds of conveyance of the later purchases vested title in Mr. and Mrs. Marsh as joint tenants. This was done pursuant to written instructions, signed by Mr. and Mrs. Marsh at the time the purchases were made.

Mr. Marsh had about $500 when he married Naomi. During the marriage he received no money or property by gift or devise. And he married again a month or two after Naomi died.

Naomi had high blood pressure. In 1947 she had a minor stroke, from which she never completely recovered. Other strokes followed. As time went on she became partly paralyzed and incontinent. Her mental powers were affected by her first stroke. And she progressively deteriorated physically and mentally. "Her thinking kept declining up until the time of her death," her son said.

Mr. Marsh took good care of his wife in her illness, and he treated her kindly all during the marriage. He did cause her worry and concern by going on occasional drunken sprees that lasted for weeks at a time.

Relations between the mother and her only son were close and friendly. The mother didn't entirely approve of the son's wife, or the son's wife's mother; but it is the common experience of mankind that that situation does not indicate any lack of love or affection between a mother and her married son.

Naomi died in 1953, without leaving a will. Her husband was appointed administrator of her estate. He filed his inventory and appraisement, listing as community property the $600 of real property already mentioned; and, for inheritance tax purposes, $47,000 worth of property in joint tenancy.

During the marriage the motel paid $55,000, and Naomi received approximately $80,000 from her aunt's estate, a total of $135,000.

The son, James L. Hughes, filed objections to the administrator's final account and petition for distribution. Grounds alleged were that all the property in joint tenancy was Naomi's separate property, and that her husband by fraud and undue influence had persuaded her to sign the instructions that the deeds were to be made that way.

The objector also alleged that the administrator had failed

to list in the inventory a fur coat, a diamond ring, and the furnishings in the motel.

Upon trial of the issues thus presented, the superior court found that the husband and the son were Naomi's only heirs; that all of the real and personal property, joint tenancy and community, listed in the inventory (including the motel) was the separate property of the decedent; that a confidential relationship existed between husband and wife, that the husband had great influence over her, that she was dominated by him, and did not have the will power to resist his influence and suggestions; that it was never her intention to give to her husband a true joint tenancy estate so that all the real property would go to him upon her death, and thus disinherit her son; and that he holds title to the property as trustee for the heirs at law of the decedent.

The judgment sustained the son's objections to the final account and petition for distribution, and disapproved it; directed the administrator to list the personal property and the real property held in joint tenancy in an amended and supplemental inventory; to account for the income from the real property; and declared that title to all of the property, real and personal, is in the heirs at law of the decedent, determined to be the husband and the son in equal shares.

Motion for a new trial was made and denied.

Mr. Marsh appeals from the judgment.

He contends on appeal:

That there is no substantial or legal evidence to support the findings and judgment.

That, if it be determined there was any such evidence, then it was error for the trial court to refuse to grant a new trial or to make different findings, in the light of the affidavits in support of his motion therefor.

That it was error to admit in evidence declarations of Naomi made during her lifetime and out of the presence of her husband.

That, in any event, the motel property was not purchased from separate property of decedent.

That the objector's pleadings failed to raise the issue of undue influence.

At the threshold of a discussion of these contentions, it must be said that most of them are refuted by the trial judge's affirmative answer to the question: Was the vesting of title in joint tenancy of the wife's separate property se-

cured by fraud and undue influence by the husband upon his wife?

This is the important question in this case.

It appears from an examination of the record that while the evidence conflicts as to many details, it substantially supports the judge's findings of undue influence and fraud and that the motel was purchased from the separate funds of the wife.

The parties were husband and wife. The husband was with his wife when she signed the instructions to vest title to the property purchased in joint tenancy. The property was paid for with her money. She was partially paralyzed, and her mental powers were impaired.

One of her sisters testified as to her mental condition:

"Q. After that time [the first stroke], did you notice any difference in Mrs. Marsh's mental condition? A. Yes.

"Q. What difference did you notice? A. Well, I noticed she was getting, with every stroke, that she was becoming more incoherent and wasn't herself.

"Q. Were her mental powers affected by the first stroke, in your opinion? A. Yes, indeed.

"Q. To what extent? A. Well, she seemed childish. She didn't seem to take hold like she did, and she would cry a lot and she just wasn't herself. She got better and then she got several more strokes but she never was herself again. She never regained her health again."

In his memorandum of opinion the trial judge said:

"The entire situation and the evidence proves to me that Mrs. Marsh did not have the slightest conception of what joint tenancy meant. She thought that in the event of her death without a will the property would go one-half to her husband and one-half to her son and she so expressed herself. In my opinion, if she had had the slightest idea that her son would not get one-half of her estate she would have sought capable legal advice and would have taken the necessary means to destroy the joint tenancy and have the title to the property which she inherited and which belonged to her as her separate estate in such form as would render it subject to her testimentary disposition so that she could be assured that her son would get his just share of her estate. In any event, she was led to believe, and she did believe, that regardless of what joint tenancy meant her son in the final analysis would get one-half of her estate and her husband the other one-half."

It is well settled that transactions between husband

and wife are subject to the general rules that control persons occupying confidential relations with each other. (*Huber* v. *Huber*, 27 Cal.2d 784 [167 P.2d 708].)

If a husband obtains an advantage over his wife he must show that he has not abused the confidence reposed in him by her. He has the burden of showing that his transactions with her were fair and just and fully understood by her. And if he fails to so show, the presumption arises that such transactions were made under undue influence and were fraudulent. (*Jorgenson* v. *Pardee,* 101 Cal.App.2d 96 [224 P.2d 884].)

Appellant stresses his contention that in any event the motel was acquired with community funds. This presents only a conflict in the evidence as to whether or not the motel was bought with Naomi's separate property. The judge's finding, together with his finding of fraud and undue influence, is final.

Unless there are some factors that alter the situation, real property purchased with the separate property of one spouse, together with the rents, issues, and profits therefrom, and any increase in value thereof, remains separate property. (*Huber* v. *Huber, supra,* 27 Cal.2d 784.)

There then remains to be considered appellant's contentions as to error in the admission of Naomi's declarations, that the objector's pleading of undue influence is not sufficient, and that the motion for a new trial should have been granted.

Referring first to Naomi's declarations.

As stated in appellant's opening brief these declarations may be summarized substantially as follows: That Naomi wanted to make a will, that her husband didn't believe in wills, and that she thought that if anything should happen to her, her son would come into half anyway, and that her husband had promised to do right by her son. Further that Naomi intended making arrangements for her son and that she knew her husband would take care of him and see that he received what was due to him, which she figured to be one-half. Also that the son testified that he asked Naomi, out of her husband's presence, about a will in 1945, and she said that she would like her husband to have a life estate in the motel and then return it to the son upon her husband's death, and everything else that she wanted the son to have.

Appellant relies upon rules set forth in *Socol* v. *King,* 36 Cal.2d 342 [223 P.2d 627]; *Gudelj* v. *Gudelj,* 41 Cal.2d 202

[259 P.2d 656], and *Chamberland* v. *Whitney*, 19 Cal.App.2d 660 [66 P.2d 220].

Reference to these cases, however, shows that they are not controlling here, because the facts are not the same. For example, in the Socol case the major consideration for property taken in joint tenancy was other joint tenancy property. In the Gudelj case a husband's separate property found its way into a joint tenancy with his wife. In such circumstances the rules and presumptions are not the same as in this case. And in the Chamberland case the reviewing court commented that it was a suit to enforce an alleged unwritten contract to transfer property.

The general rule is that whenever the intent, feeling, belief, or other mental state of a person at a particular time is material to an issue under trial, evidence of such a person's declarations that will tend to show his mental state at the time are admissible in evidence. (*Estate of Carson*, 184 Cal. 437 [194 P. 5, 17 A.L.R. 239].)

In *Emden* v. *Verdi*, 124 Cal.App.2d 555 [269 P.2d 47], this court said (at pages 560-561):

"Appellant's final argument is that 'The court erred in admitting testimony of alleged statements made by the decedent shortly before his death.' Reference is here made to the conversation between decedent and his attorney and the letter dictated by decedent to his nurse and sent to Mr. Jones covering essentially the matters discussed by them in their previous conference. Objection is made particularly to decedent's reference to a deed from appellant to him conveying the property here in controversy and his direction to Mr. Jones to tell appellant, if such were necessary to secure the cashier's checks, that he would cause the destruction of the deed upon delivery of the checks. This testimony was not admitted for the purpose of establishing the existence of such a deed, but for the purpose, as the trial judge ably pointed out, of throwing light upon the intention with which the conveyance was caused to be made. . . . For such purpose this testimony was admissible in evidence as an exception to the hearsay rule and it is immaterial that such statements were self-serving. (Citing cases.)"

Referring now to appellant's objection to the pleading. The allegation is as follows:

"Objector hereby alleges that all of the above described real property was actually the separate property of the decedent, and objector further alleges that John S. Marsh

by fraud and undue influence persuaded the decedent to place said property in his name and her name as joint tenants prior to the death of the decedent.''

This objection is made for the first time on appeal, and, therefore, need not be further considered. Cases cited in support of the objection to the pleading tend to hold that fraud and undue influence should be pleaded with greater particularity.

But the pleading here in question fully advised the administrator of the grounds of objection, and no prejudicial error may now be predicated upon the sufficiency of the pleading, long after that could have been submitted to the trial court by demurrer, or timely objection on the trial of the case.

Referring finally to appellant's contention that his motion for a new trial should have been granted.

Beyond the statement that it was error not to grant the motion, appellant presents no argument and cites no authority in support of this proposition. And respondent's brief does not touch upon the subject.

However, this court has examined the affidavits upon which the motion was based, and can find nothing that would require a reversal of the judgment. The new and additional evidence proposed would have been no more than cumulative in its effect. Therefore, no abuse of discretion has been shown that would constitute prejudicial error in denying the motion.

The judgment is affirmed.

White, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied June 18, 1957, and appellant's petition for a hearing by the Supreme Court was denied July 24, 1957.