[Civ. No. 27410. Second Dist., Div. One. Dec. 23, 1963.]

DOROTHY M. DONOVAN, Plaintiff and Respondent, v. DOUGLAS DONOVAN, Defendant and Appellant.

Lloyd J. Seay for Defendant and Appellant.

Martin B. Berman and Joseph M. Wapner for Plaintiff and Respondent.

FOURT, J.—This is an appeal from an interlocutory judgment of divorce (a divorce was granted to each of the parties, custody of the children was awarded and some of the property was distributed) ''and from the whole of said judgment.''

Plaintiff wife brought an action in divorce against the defendant husband. She alleged among other things the usual

matters and conditions and then set forth that the community property of the parties consisted of (1) the real property which was occupied by them with their two children as a home, (2) certain horses and a trailer, (3) household furniture and furnishings, (4) an interest in a joint venture, (5) shares of stock in the Donovan Ranch (a property located and operating in the State of Montana), (6) monies on deposit in a bank and monies in a savings and loan association, (7) certain notes receivable (Yellin notes), (8) life insurance and (9) automobiles. She asked for support and maintenance for herself and for custody, support and maintenance of the minors and attorneys' fees and costs—further she requested that the husband be restrained from molesting her or the children and from taking any of the assets of the parties. She further prayed for a divorce and "an equitable division of the community property" and the other usual requests.

An order to show cause was issued and on February 5, 1962, pursuant to stipulation the court made an order (pending further action) that the wife should have the custody of the children, the husband should have reasonable rights of visitation and he should pay for their support and maintenance certain specified sums—the husband was to absent himself from the house previously occupied as a home, the exclusive use thereof to be for the wife and children. After providing for the payment of several other items, the order set forth: "Defendant is ordered to pay direct to attorney for plaintiff on account of combined attorney's fees and court costs the sum of $500, payable $250 forthwith, and balance on or before May 31, 1962."

The husband answered the complaint by denying any acts of cruelty and stated "... this answering defendant alleges that since the marriage of the parties hereto and as a result of an inheritance by this answering defendant from the C. L. Donovan Estate in Toledo, Ohio, wherein and whereby he received the approximate sum of $34,744.99, and together with other income from the separate property and estate of this answering defendant, the parties hereto have acquired certain property which has been placed in the status of joint tenancy and community property of the parties hereto." There then followed a list of the properties which the plaintiff wife had listed as being the community property of the parties. It was further set forth that the husband was the owner of 17,600 shares of capital stock of Donovan Ranch in

Montana which was his sole and separate property, that it was a part of an inheritance which he had received, that the husband had caused such shares to be carried on the books and records of the Donovan Ranch Company in the name of the husband and wife "as joint tenants" for the purpose of protecting the wife in the event of the death of the husband.

The husband also filed a cross-complaint of divorce wherein he alleged cruelty and set forth substantially the same allegations as are contained in his answer with reference to the property of the parties. The wife answered the cross-complaint by denying the allegations thereof excepting that she admitted that the husband had caused the 17,600 shares of capital stock in the Donovan Ranch to be carried in joint tenant ownership.

A proposed first amended complaint was ultimately filed and answered, however it is unnecessary to comment further about it insofar as this opinion is concerned.

The joint pretrial statement set forth that the parties could not agree as to the manner in which they held the shares of stock, the house, livestock and other property, and such was to be an issue in the case—there was a further issue as to whether defendant should pay any added sums as and on account of attorneys' fees and costs "if further fees and costs are due."

After a trial where both parties and others testified upon the issues involved the court made findings to the effect that each of the parties was guilty of extreme cruelty to the other, that the husband did cause the 17,600 shares of capital stock in Donovan Ranch (which he had inherited) to be reissued in the name of the husband and wife "as joint tenants with right of survivorship," that originally the funds used for the purchase of the real property were separate property of the husband, that prior to the purchase of the property and after he received the funds he deposited the funds in a joint account in favor of himself and his wife, and subsequent to the deposit the funds were commingled with other funds belonging to both of the parties, that the real property was transferred to the husband and wife as joint tenants, that the defendant caused the 17,600 shares of stock in the Donovan Ranch to be held by husband and wife "as joint tenants with right of survivorship." The court concluded that each of the parties was entitled to a divorce, that each owned as his, or her, separate property an undivided one-half interest in the real property as joint tenants, that each owned as his or her separate property a one-half interest in the shares of stock,

that the horses, trailer and furniture and furnishing were the community property of the parties. The court then ordered in the interlocutory judgment of divorce that each party be entitled to a divorce, that the wife have the custody of the children with the right of certain visitations in the husband, the parties to own as joint tenants the real property and "sole possession of the said real property and appurtenances thereto is granted to the plaintiff Dorothy Donovan. Defendant Douglas Donovan is hereby restrained from occupying or entering upon or making use of the premises except in the exercise of his visitational rights." It was further ordered that each of the parties should own a one-half interest in the shares of stock in the Donovan Ranch Company—that the wife be awarded as her sole and separate property all of the household furniture and furnishings located in the residence. The husband was ordered to pay certain amounts for the support and maintenance of the wife and children and further "plaintiff's attorney Martin B. Berman, Esq. is hereby awarded additional attorney's fees in the amount of $1,500.00, said sum to be paid to said Martin B. Berman, Esq. one-half (or the sum of $750.00) by the defendant Douglas Donovan and one-half (or the sum of $750.00) by the plaintiff Dorothy Donovan. In addition thereto defendant is ordered to pay to plaintiff's attorney, Martin B. Berman, Esq., the sum of $228.23 as and for costs."

The husband was awarded the proceeds due from the promissory notes (Yellin notes) as his separate property. The horses were ordered to be sold within one year and the net proceeds to be equally divided between the parties. Appellant makes no contention presently that the divorce should not have been granted even though the notice of appeal indicates that the appeal is from "the whole of said judgment."

Apellant now asserts in effect that the findings of fact and conclusions of law are contrary to the pleadings, that the evidence does not sustain the findings with reference to the status of the real and personal property, that the wife is not entitled to the exclusive possession of the home and that the court failed to find upon certain material issues.

A reading of the record indicates that there is substantial evidence from which the court could have drawn the inferences and the conclusions which were made to the effect that the husband knew what he was doing when he caused the various documents and instruments to be so drawn as to have the record title in the respective properties in himself

and his wife as joint tenants with the right of survivorship. It is not the province of this court to reevaluate this evidence *Price* v. *Price,* 217 Cal.App.2d 1 [31 Cal.Rptr. 350]).

There is no evidence to the effect that the husband during the marriage ever attempted to convey his interests in any of the joint tenancy property, without joinder by the wife, to another with the thought of severing the joint tenancy. (See *Delanoy* v. *Delanoy,* 216 Cal. 23 [13 P.2d 513].) It is apparent that there was no evidence which the court believed to the effect that the parties themselves had agreed to terminate any joint tenancy created subsequent to the marriage. See *McDonald* v. *Morley,* 15 Cal.2d 409 [101 P.2d 690, 129 A.L.R. 810] ; *Wardlow* v. *Pozzi,* 170 Cal.App.2d 208 [338 P.2d 564] ; *California Trust Co.* v. *Anderson,* 91 Cal.App.2d 832 [205 P.2d 1127]. See also *Goldman* v. *Goldman,* 116 Cal.App.2d 227 [253 P.2d 474].

Section 683 of the Civil Code sets forth the definition and method of creating a joint tenancy.[1]

It is correctly stated in the California Family Lawyer, California Continuing Education of the Bar, volume 1, page 106: "Where title to property is taken in joint tenancy by the husband and wife, a gift is presumed from whatever estate furnished the consideration for the property, whether the community estate or the separate estate of either spouse, to the extent necessary to cause the property to be held in joint tenancy. *Benam* v. *Benam* (1960) 178 Cal.App.2d 837 [3 Cal.Rptr. 410]. Therefore, the presumption of a joint tenancy from the form of the conveyance cannot be rebutted merely by showing the source of the funds used to acquire the property. *Donlon* v. *Donlon* (1957) 155 Cal.App. 2d 362 [318 P.2d 189] ; *Bogerding* v. *Mumolo* (1957) 153 Cal.App.2d 821 [315 P.2d 347] ; *Cash* v. *Cash* (1952) 110

---

[1] "§ 683. [Joint tenancy defined, and how created.]

"A joint interest is one owned by two or more persons in equal shares, by a title created by a single will or transfer, when expressly declared in the will or transfer to be a joint tenancy, or by transfer from a sole owner to himself and others, or from tenants in common or joint tenants to themselves or some of them, or to themselves or any of them and others, or from a husband and wife, when holding title as community property or otherwise to themselves or to themselves and others or to one of them and to another or others, when expressly declared in the transfer to be a joint tenancy, or when granted or devised to executors or trustees as joint tenants. A joint tenancy in personal property may be created by a written transfer, instrument or agreement. Provisions of this section shall not restrict the creation of a joint tenancy in a bank deposit as provided for in the Bank Act."

Cal.App.2d 534 [243 P.2d 115]; *Walker* v. *Walker* (1952) 108 Cal.App.2d 605 [239 P.2d 106]. ■ Contrary to the rule relating to property placed in the wife's name by the husband, the presumption of the joint tenancy character of the property also cannot be rebutted solely by evidence of a secret intention of one of the spouses, undisclosed to the other, that the property was to retain its previous character. *Socol* v. *King* (1950) 36 Cal.2d 342 [223 P.2d 627]; *Guerin* v. *Guerin* (1957) 152 Cal.App.2d 696 [313 P.2d 902]; but cf. *Estate* of *Marsh* (1957) 151 Cal.App.2d 356 [311 P.2d 596] (where this rule was evaded under the shibboleth of 'undue influence')."

■ Where as here, the real property and the capital stock of Donovan Ranch were conveyed to the husband and wife as joint tenants (and in each instance in this case apparently the husband was the person who caused the documents to be so drawn), such properties are presumptively held in joint tenancy. See *Siberall* v. *Siberall*, 214 Cal. 767 [7 P.2d 1003]; *Wisely* v. *Wisely*, 178 Cal.App.2d 181 [2 Cal. Rptr. 886].

This case does not present a situation in which the wife attempted to establish that the husband by some conversation had changed the type of ownership from his separate property to that of a joint tenancy. ■ It has been stated many times that a joint tenancy cannot be created by oral agreement in either real property (*Wheeland* v. *Rodgers*, 20 Cal. 2d 218 [124 P.2d 816]; *Estate of Harris*, 9 Cal.2d 649 [72 P.2d 873]) or in personal property (*California Trust Co.* v. *Bennett*, 33 Cal.2d 694 [204 P.2d 324]; *Crocker-Anglo National Bank* v. *American Trust Co.*, 170 Cal.App.2d 289 [338 P.2d 617]).

■ Appellant seems to argue here that there was no joint tenancy created because no transfers were first made to a third person who subsequently granted back to the husband and wife as joint tenants. Such a procedure is not necessary to create a valid joint tenancy. (See *Edmonds* v. *Commissioner of Internal Revenue*, 90 F.2d 14; *Lamb* v. *Lamb*, 131 Cal.App.2d 489 [280 P.2d 793]; *King* v. *King*, 107 Cal.App. 2d 257 [236 P.2d 912]; *Siberell* v. *Siberell*, 214 Cal. 767, 773 [7 P.2d 1003].)

■ Under the rule of *DeBurgh* v. *DeBurgh*, 39 Cal.2d 858 [250 P.2d 598], and subsequent cases such as *Harris* v. *Harris*, 210 Cal.App.2d 559 [26 Cal.Rptr. 882]; *Mears* v. *Mears*, 180 Cal.App.2d 484 [4 Cal.Rptr. 618] and *Visini* v.

*Visini,* 212 Cal.App.2d 183 [27 Cal.Rptr. 782], where the court grants a divorce to both parties presumably the court should divide the community property equally since neither spouse is innocent. See also 5 Stan.L.Rev. 540, 544.

█ Having declared the house and the capital stock in Donovan Ranch to be joint tenancy property the court had no power to divide such property as between the parties. See *Schindler* v. *Schindler,* 126 Cal.App.2d 597 [272 P.2d 566], and *Walker* v. *Walker,* 108 Cal.App.2d 605 [239 P.2d 106]. The judgment to the effect that the wife should have the exclusive possession of the house was clearly reversible error. See *Machado* v. *Machado,* 58 Cal.2d 501, 506-507 [25 Cal. Rptr. 87, 375 P.2d 55], where it is stated: "[4] Although a joint tenancy deed is not conclusive as to the character of real property, it creates a rebuttable presumption that it is held in joint tenancy. The presumption created by the deed cannot be overcome by testimony of the hidden intentions of one of the parties, but only by evidence tending to prove a common understanding or an agreement that the character of the property was to be other than joint tenancy. [3b] Since there was no evidence of a common understanding or an agreement the presumption was not overcome. (*Gudelj* v. *Gudelj,* 41 Cal.2d 202, 212-213 [259 P.2d 656]; *Socol* v. *King,* 36 Cal.2d 342, 345-346 [223 P.2d 627].)

"Similar principles apply to the joint savings and loan account. Financial Code section 7602 provides: 'When shares or investment certificates are issued in the name of two or more persons whether minor or adult as joint tenants or in form to be paid to any of them or the survivors of them, such shares or certificates and all dues paid thereon become the property of such persons as joint tenants.' [5] In *Paterson* v. *Comastri,* 39 Cal.2d 66, 71 [244 P.2d 902], we held that similar language applying to joint bank accounts now contained in Financial Code section 852 created a rebuttable presumption of joint tenancy that may be overcome by proof that the owner of the funds, when making the deposit, did not intend to create a true joint tenancy. This holding applies also to section 7602. (See *Pruyn* v. *Waterman,* 172 Cal. App.2d 133, 136-137 [342 P.2d 87].) [6] Whether the presumption was overcome was a question of fact for the trial court. (*Gudelj* v. *Gudelj, supra; Paterson* v. *Comastri, supra,* 39 Cal.2d at p. 73.)

" . . . . . . . . .

"In a divorce action the court does not have the authority to award any of the separate property of one spouse to the

other. (*Fox* v. *Fox*, 18 Cal.2d 645, 646 [117 P.2d 325].) Neither can it award the wife exclusive possession of real property owned by the spouses as joint tenants. (*Carter* v. *Carter*, 148 Cal.App.2d 845, 848-849 [307 P.2d 630]; *Jenkins* v. *Jenkins*, 110 Cal.App.2d 663, 665 [243 P.2d 79]; *Barba* v. *Barba*, 103 Cal.App.2d 395, 396 [229 P.2d 465]), except as provided in Civil Code section 157. That section provides that in divorce proceedings 'the court may make orders for temporary exclusion of either party from the family dwelling or from the dwelling of the other, until the final determination of the action.' (See also Code Civ. Proc., § 949a.) [9] The purpose of this section is to protect the spouse's right to the exclusive occupancy of his or her or the family dwelling pending final determination of the action. [10] The trial court therefore erred in awarding plaintiff not simply the exclusive right to occupy the dwelling but also the exclusive right to use it in any way she might see fit. Moreover, its order was not limited in time to the final determination of the action.''

There was no appraisal of the household furniture and furnishings and nothing in the record seems to indicate why or upon what theory the wife should have all of the same assigned to her as her separate property under the particular circumstances of this case. No findings were made with reference to any monies on deposit in the savings and loan association or in the bank and there is no evidence as to how much in dollars there was on deposit in such accounts; furthermore there is no provision in the judgment or otherwise requiring the wife to account for approximately $1,000 which she admittedly withdrew from a savings and loan account at the time of the filing of the complaint. There is no finding with reference to the life insurance policies, the ranch equipment, the automobiles or the joint venture assets.

There is no disposition made in the interlocutory judgment of the trailer, the joint venture assets, life insurance, automobiles and ranch equipment of the parties nor is there any determination as to how they were held as between the parties, that is, whether they were community or separate property.

There is also the matter of costs. As heretofore set forth by stipulation between the parties the husband was ordered to pay $500 to counsel for the wife on account of costs and attorneys' fees. The husband paid such amount. The attorney for the wife set forth in an affidavit at the time of trial that $228.23 of the amount received from the hus-

band went to pay certain costs. The husband was thereupon ordered by the court at the conclusion of the trial to pay an additional $750 for attorneys' fees and $228.23 as costs although the amount as costs had already been paid to counsel for the wife. It would seem to go without saying that the husband should not be required to pay costs twice.

The horses and the horse trailer were found to be community property. The judgment directed that '(all three horses owned by the parties shall be sold within one (1) year from the date of the execution of this decree, the net proceeds therefrom to be divided equally between the parties.'' Nothing was determined as to who should provide for the horses in the meantime or who should conduct the sale thereof. It is clear that certain property rights were put in issue and were not settled. ▮▮▮▮ The purpose of the action was to bring to an end all matters which were to be litigated and in controversy. To fail to make a disposition of all of the property rights in question was reversible error. *Wilson* v. *Superior Court*, 31 Cal.2d 458, 463 [189 P.2d 266].

The interlocutory judgment, made and entered February 13, 1963, is affirmed in the following respects:

1. The granting of a divorce to each of the parties;

2. The award of the custody of the children, the visitation rights extended and the orders for their support and maintenance and for payment of medical care;

3. The determination and order that the parties hold their former residence and stock in the Donovan Ranch Company as joint tenants;

4. The alimony payments (as determined) to the wife;

5. The order providing for added attorneys' fees (as distinguished from costs);

6. The order directing each party to refrain from molesting the other;

7. The order determining that the horses were community property;

8. The order that the husband maintain the existing insurance policies.

In all other respects the judgment is reversed.

Wood, P. J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 19, 1964.