[Civ. No. 19390. First Dist., Div. Three. June 18, 1962.]

WREATHEL IRENE ALLEN, Individually and as Administratrix, etc., et al., Plaintiffs and Respondents, v. BERTHA Z. SAMUELS, Defendant and Appellant.

Peter L. Lojo for Defendant and Appellant.

Brown, Kellogg & Taber and Heber J. Brown for Plaintiffs and Respondents.

DEVINE, J.—Judgment was awarded to plaintiff Wreathel Irene Allen, as administratrix of the Estate of Ira A. Samuels, deceased, for the proceeds of the sale of real property which was found to have been the separate property of the decedent, and against defendant, widow of the decedent, who had received the said proceeds; and from the judgment defendant appeals. The sale of the real property was made by a deed, the validity of which was one of the two chief problems before the trial court, the other being the nature of the ownership, that is, whether the property was joint tenancy, separate or community property. That court decided that the deed was and is void, because at the time of its purported execution, Mr. Samuels the putative grantor, was without mental capacity sufficient to understand the effect of a deed or to execute such a conveyance, and that the property was separate property of the decedent, except as to community contribution of $1,100.

Wreathel Irene Allen and Basil Vernon Samuels are daughter and son of the decedent by his first marriage, which terminated by divorce in 1914; and defendant Bertha Z. Samuels is decedent's widow, having married him in 1953. On November 7, 1957, decedent made a mark on a deed to defendant; on November 20, 1957, he died. Defendant sold the property described in the deed, plaintiffs commenced this action to recover the proceeds individually, as heirs, but at a later time Wreathel Irene Allen in her capacity as administratrix became a party plaintiff, and judgment was rendered in her favor as such administratrix.

In 1953, Ira A. Samuels, then 67 years old, married defendant, a widow with two minor daughters. The property on Mono Avenue, in the Township of Eden, which was the subject of the disputed deed, was the separate property of Samuels at the time of his marriage to defendant. Two distinct remodeling operations were done on the property following the marriage, in one of which additional buildings were constructed as rental units. These were financed by application of (1) $1,000 from a bank account which was the separate property of the husband, (2) $1,100 from community earnings and social security payments received during the marriage (for which allowance was made in the judgment), and (3) loans

somewhat in excess of $18,000 made on promissory notes signed by Samuels and the defendant, his wife, secured by deeds of trust similarly signed.

There were several indications given by Samuels that he intended the property to be held in some sort of dual ownership with his wife. At the time he asked her to sign the first note and deed of trust, he told her, according to her testimony, " 'You sign these papers for this money and you will own it just the same as I do. The property will be yours just the same as mine.' " At the time of the second borrowing, Samuels said, in the presence of his wife and of her two daughters, that his wife must sign again for the loan, but " 'You will still own just as much of that as I do'—said, 'We'll all be just joint tenancy, then, we'll all be in it together and it will be our property.' " She testified that her husband wondered why her name was not on the tax bill, saying it was supposed to be, and that both she and her husband understood the property to have been placed in joint tenancy. All of the fire insurance policies were in both names.

In June 1957, the husband and wife decided to sell the home and the rental units and to buy a smaller home. Mr. Samuels instructed the real estate broker, Mrs. Martin, that the property that was to be purchased was to be in joint tenancy, and said, " 'I want all of our property to be in joint tenancy.' " An offer to purchase the Mono Avenue property was obtained by the broker for a price of $39,500 and was accepted by Mr. Samuels and by defendant. While the sale was in escrow, Mr. Samuels suffered a stroke, from which he made a rather good temporary recovery, and he and Mrs. Samuels made a written offer to purchase a home in San Lorenzo, which offer was accepted by the sellers. Four days later, and while both sales were in escrow, Mr. Samuels suffered a severe stroke which paralyzed his right side and almost entirely destroyed his ability to speak.

On November 7, 1957, Mrs. Martin, the real estate broker, presented a deed to Mr. Samuels as he lay in the hospital bed. It is undisputed that Mr. Samuels had no power of speech at the time and that he could not sign his name. There was testimony that Mrs. Martin and Mrs. Samuels told Mr. Samuels that the deed had been made up so that the transaction could be finished, that he was asked if it was all right and that he nodded his head affirmatively. He made some slight movement, according to the testimony, but was unable to do more, and his brother took his arm and guided it to make the mark "X."

On the other hand, Mrs. Smith, who was married to Mr. Samuels' stepson by a previous marriage, testified that she heard no mention made of a deed although she saw the mark made, but she heard a document referred to as a power of attorney (a power of attorney to sell a truck was executed at the same time, in the same way).

Dr. Gersten, who attended Mr. Samuels, testified that he had suffered a hemorrhage of a major vessel in the brain, that with a right-handed person most of the thinking abilities are on the right side and if that is paralyzed, as it was in this case, in all likelihood the thinking capacity also is paralyzed, and that he could not say whether the decedent had any capacity to rationalize any problem. He testified that when persons have a hemorrhage or thrombosis as massive as this, it is but a short time until they get another stroke and that they die very quickly thereafter. He said, ''They become more or less vegetables in that respect.'' On proceedings on motion for new trial, the judge said he understood this to refer to decedent's condition when the doctor saw him. In a record dated November 12, 1957, the doctor made an entry, ''No change, cannot talk or understand, incontinent,'' although it was brought out that on November 12 Ira Samuels was probably better than he had been on November 7, 1957.

Against this, there is testimony to the effect that Mr. Samuels made responses by movements of his head at times; but, again, there is testimony that the head movements were always a downward nod, the ordinarily affirmative one.

Two preliminary procedural problems should be disposed of before discussion of the principal questions in the case. The first is the technical objection made by the defense that there was no proof that the administratrix plaintiff had been duly appointed, qualified and acting. She did, however, testify that she was the administratrix, and the court could take judicial notice of its own records. (*Flores* v. *Arroyo*, 56 Cal.2d 492, 496, 497 [15 Cal.Rptr. 87, 364 P.2d 263].)

The second claim made by appellant in the matter of procedure is that it was error to allow an amendment to the complaint to conform to proof to state that decedent was lacking in capacity to sign a deed, the original complaint having been based on fraud. However, in the action based on fraud, reference was made to incapacity, and in the pretrial order the very first issue was stated, ''Whether or not decedent was incapacitated at the time of the execution of the said deed.'' The pretrial conference order, where inconsistent

with the complaint, will supersede the complaint. (California Manual of Pre-Trial Procedure, rule 8.8*; 2 Witkin, California Procedure [1961 Supp.], Trial, § 30H, p. 194.)

The first of the substantive contentions of appellant is that there is no substantial evidence to show mental incapacity. The presence or absence of mental capacity is a matter which must necessarily depend upon the peculiar circumstances of the particular case, and unless it is made to appear clearly that upon no hypothesis is there sufficiency of substantial evidence to support the conclusion of the trial court, that conclusion may not be set aside upon the ground of insufficiency of the evidence. (*Rieger* v. *Rich,* 163 Cal.App.2d 651, 662, 663 [329 P.2d 770].) The testimony of the attending physician, and the fact that decedent could make virtually no communication, and perhaps no communication at all, with anyone, are sufficient elements of substantial evidence to sustain the judgment.

The second substantive question is whether there was sufficient evidence to support the finding that the property was the separate property of the decedent. With the deed invalidated, there is no other writing which could effectuate a joint tenancy. Section 683 of the Civil Code provides, in part: "A joint interest is one owned by two or more persons in equal shares, by a title created by a single will or transfer, when expressly declared in the will or transfer to be a joint tenancy." This provision is mandatory, and under it joint tenancies can be created only by a writing. (*California Trust Co.* v. *Bennett,* 33 Cal.2d 694, 697 [204 P.2d 324].)

Undoubtedly, the court could have found that pending such time as the joint tenancy which the parties had in mind would have been created, there had been an executed oral agreement to transmute the separate property of the husband to community property. In this state such transmutation may be made orally and informally (*Woods* v. *Security-First Nat. Bank,* 46 Cal.2d 697, 701 [299 P.2d 657]; *Kenney* v. *Kenney,* 220 Cal. 135 [30 P.2d 398]; *Estate of Sears,* 182 Cal.App.2d 525, 529 [6 Cal.Rptr. 148]; *Linville* v. *Linville,* 132 Cal.App.2d 800, 803 [283 P.2d 34]), and transmutation may be shown by the very nature of the transaction or appear from the surrounding circumstances (*Estate of Neilson,* 57 Cal.2d 733, 743 [22 Cal.Rptr. 1]; *Long* v. *Long,* 88 Cal.App.2d 544, 549 [199 P.2d 47]). However,

*Now Cal. Rules of Court, rule 216.

the court was not obliged to make such a decision. As the court pointed out at the hearing on motion for new trial, the parties had referred continually to a joint tenancy. Mrs. Samuels testified that she and her husband had understood that actually the property was in joint tenancy after the new units had been put on it. The court was well within its discretion in concluding, as no doubt it did, that although the parties had meant to create a joint tenancy, they had not yet succeeded in doing so; and that meanwhile, although they may have been mistaken in believing the property to have been held in joint tenancy, they had not determined between themselves at any time that it was community property. The two forms of ownership are essentially different, and for some purposes it may be advantageous to the husband to have the property in joint tenancy rather than held as community property; in event of the wife's death before the husband, the whole property would belong to him if it were held in joint tenancy, but if it were held as community property one-half would be subject to testamentary disposition by the wife. (Prob. Code, § 201.) Thus, the court was under no compulsion to accept the proposition that where joint tenancy was intended, community property was created.

Judgment affirmed. The purported appeal from the order denying motion for new trial is dismissed.

Draper, P. J., and Salsman, J., concurred.

A petition for a rehearing was denied July 18, 1962, and appellant's petition for a hearing by the Supreme Court was denied August 15, 1962.