[Civ. No. 28328.   Second Dist., Div. Two.   June 24, 1965.]

NORMAN MARBACK, Plaintiff and Respondent, v. SIDNEY MARBACK et al., Defendants and Appellants.

Kate Whyner for Defendants and Appellants.

Max Bamberger and Harry Brody for Plaintiff and Respondent.

ROTH, P. J.—Appellants Sidney and Fannie Marback appeal from a judgment nullifying a deed executed on June 2, 1961, by Sidney's invalid mother, Nancy Marback Robbins (Nancy), purporting to transfer to him a one-half interest in certain real property.  For some years prior thereto and on the date of the deed the property transferred was held by Nancy and her son Norman, appellants' brother, in joint tenancy.  The basis for the trial court's judgment, entered

subsequent to a like advisory jury verdict, was that Nancy was mentally incompetent and was under undue influence exercised by appellants at the time of execution. Appellants contend that the evidence was insufficient to sustain the advisory verdict and the judgment. We, therefore, set forth the evidence in detail.

Prior to December 1960, Nancy had been an astute business woman who, though widowed for a number of years, had managed her own business and who had enjoyed good health. The property in question had been conveyed by Nancy in joint tenancy to herself and respondent Norman in two several conveyances in 1952 and 1959. In 1958, at a time when there was no question of her competency, Nancy executed a will whereby she disinherited Sidney and a third son who is not connected with the present litigation and left her entire estate, except certain minor items, to respondent.

In December 1960, Nancy, then 79 years old, as a consequence of a heart attack, was hospitalized. Continued care was imperative and she was transferred to a private sanitarium. She remained there until her death in January 1962. The attending physician, Dr. Herzen, who had been Nancy's doctor since 1947, testified that on December 24, 1960, Nancy was suffering from arterio lateral coronary occlusion, showing signs of lapse of memory, disorientation and occasional hallucinations, and arterio sclerotic heart disease with cerebral anoxia. The disorientation took the form of talking about one subject and without reason suddenly switching to another. Dr. Herzen further testified that as of January 27, 1961, Nancy was suffering from senility, which he characterized as a degenerative disease, and that from January 27, 1961, until June 2, 1961, there was progressive deterioration. In addition, Dr. Herzen's records showed that on February 13, 1961, Nancy failed to recognize him; complained to her nurse that the doctor had not seen her in a month or more; that on occasion she thought she was in a card parlor; on April 8 she was failing both physically and mentally; on May 11 her mental condition was getting progressively worse; and on May 25 it was noted that her mental condition "is bad." On June 6, four days after the execution of the deed, Dr. Herzen noted "Patient is very confused and incoherent. Wants to see people who have died. States she hasn't seen her son or nurses. . . ."

The attending nurse testified that between January 27, 1961, and June 2, 1961, Nancy was senile and that she was suffer-

ing from a cardiac condition. The nurse testified that between the aforementioned dates Nancy failed to recognize the doctor, although he had been there a day or two before; complained that her son Norman did not visit her, although at times he had been there one-half hour prior to her complaint; that she would refer to Norman as her husband; and that during this period her mental condition never improved.

In the very early part of May 1961, Nancy indicated to her attorney that she wanted to change her will. At their first meeting the attorney did not notice anything unusual in Nancy's behavior. However, when the will was ready for signing on May 7, the attorney noticed that Nancy could not spell her name correctly. This seemed out of character to the attorney who had known Nancy as an astute business woman. The attorney believed that she did not have the mental capacity to sign the will and therefore refused to allow her to sign it.

Doctor Bailey, a neurologist-psychiatrist and neuro-surgeon, was called in consultation by Dr. Herzen and examined Nancy on May 26 and May 31, 1961. He testified that his report, made on June 12, showed his diagnosis of the patient's condition as senility. This conclusion was based partly on the facts that the patient had an obvious memory deficiency and disorientation as to time. In answer to a hypothetical question encompassing his own examination of the patient and the facts heretofore related, it was Doctor Bailey's opinion that Nancy was medically mentally incompetent on June 2, 1961.

The degree of mental competency requisite to sustain the validity of a deed has been held to be the same degree of competency required to execute a will. Thus, in *Goldman* v. *Goldman,* 116 Cal.App.2d 227, 232 [253 P.2d 474], we held, ''Where one is able to understand his acts and the relation in which he stands to the objects of his bounty, free from any delusion, he has the capacity to dispose of his property. . . .''

■ Clearly, even though a grantor suffers a physical or mental debility or even where there is the possibility of incompetency as the result of the sustained use of drugs, he is not necessarily rendered incompetent as long as he can comprehend the nature of his act, the character of his property and his relation to the natural objects of his bounty. (*Estate of Fritschi,* 60 Cal.2d 367, 372 [33 Cal.Rptr. 264, 384 P.2d 656]; *Goldman* v. *Goldman, supra.*)

■ In the case at bench, however, there was overwhelming testimony, both medical and lay, from which the trier of

fact could infer that Nancy Robbins did not have the ability to understand the nature of her act on June 2. The medical testimony was uncontradicted.

It appears to us that the evidence outlined is ample to support a finding that Nancy was mentally incompetent to execute a deed on the date in issue. Certainly we cannot say as a matter of law that the conclusions of both the advisory jury and the judgment of the trial court were based on insufficient evidence. (*Allen* v. *Samuels,* 204 Cal.App.2d 710, 715 [22 Cal.Rptr. 528]; *Rieger* v. *Rich,* 163 Cal.App.2d 651, 662-664 [329 P.2d 770].)

Since the finding of mental incompetency is alone sufficient to invalidate the deed, we need not consider the remaining question raised by appellants' brief.

The judgment is affirmed.

Herndon, J., and Fleming, J., concurred.

A petition for a rehearing was denied July 15, 1965, and appellants' petition for a hearing by the Supreme Court was denied August 18, 1965.