[Civ. No. 30519. First Dist., Div. One. Dec. 26, 1972.]

PEARL B. SMITH, Plaintiff and Appellant, v.
RETHA MORTON, as Administratrix, etc., Defendant and Respondent.

## COUNSEL

Varni, Fraser, Hartwell & Van Blois and John S. Hartwell for Plaintiff and Appellant.

Oliphant, Hopper & Stribling and Ralph E. Hopper for Defendant and Respondent.

## OPINION

**ELKINGTON, J.**—Plaintiff Pearl B. Smith and defendant administratrix' deceased Virgil P. Bohannan were the owners as joint tenants of a parcel of real property. They entered into a written agreement dated September 19, 1966, entitled "Option for Sale and Purchase of Real Property." The agreement recited that $1,500 having been paid therefor, Bohannon granted to Smith "an option to purchase the [subject] real property" on terms and conditions therein stated.

We set forth the substance of the agreement's terms and conditions as relevant to the issue of this appeal.

Paragraph 1, entitled "Option to Purchase," provided: "Seller [Bohannon] hereby gives and grants to Buyer [Smith] the exclusive right and option for and during the period" of the next five years to purchase "all of Seller's right, title and interest" in the real property.

Paragraph 2, called "Exercise of Option," provided for the exercise of the option any time during its five-year term, by written notice by mail or hand delivery to the seller.

Paragraph 3 ("Purchase Price and Payment") related that the "total gross purchase price" was the sum of $25,000 to be paid as "hereinafter set forth. . . . Buyer shall pay each month to Seller the sum of One Hundred Fifty ($150.00) Dollars commencing October 20, 1966, and continuing until this option is exercised, cancelled by Buyer, or until September 20, 1971, whichever first occurs. This sum shall include interest on the reducing adjusted purchase price at the rate of six (6%) percent per annum. . . ." The paragraph entitled the buyer to thereafter collect

all rents due from the property, but required her to maintain it and secure suitable fire insurance. Also provided was: "During the term of this option, Seller shall pay, or be charged with, as a deduction from the gross purchase price, one-half (½) of the real property taxes and assessments. . . ."

The next paragraph, 4, "Conveyance and Title," stated: "If this option be exercised, said property will be conveyed to Buyer by Grant Deed, . . ." The final paragraph 5 entitled "Escrow" provided, "Within three (3) days of giving notice of exercising the option, Buyer shall deposit the balance of the purchase price, with appropriate written instructions, . . ." with a title insurance company.

At a time when the "Buyer" (Smith) had made monthly $150 payments on the agreement totaling several thousand dollars, the "Seller" (Bohannon), died.

Plaintiff Smith thereafter brought the instant action claiming title to the property as the surviving joint tenant. After a trial to the court judgment was entered, giving effect to the agreement, and quieting title in Smith upon her payment to defendant administratrix of the contractual balance of $15,887.27.

In her appeal from the judgment plaintiff Smith poses the single question for our determination as: "Does an option agreement for the purchase by one joint tenant of the interest of the other joint tenant terminate the joint tenancy?"

The appeal is presented to us on the judgment roll alone. We are asked by both parties to interpret the subject agreement, with its obvious ambiguities, on its language alone. Presumably no extrinsic evidence of the contracting parties' intent was offered to resolve the ambiguities (see *Walsh* v. *Walsh,* 18 Cal.2d 439, 443 [116 P.2d 62]) or under the concept of *Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co.,* 69 Cal.2d 33 [69 Cal.Rptr. 561, 442 P.2d 641], or that of *Masterson* v. *Sine,* 68 Cal.2d 222 [65 Cal.Rptr. 545, 436 P.2d 561]. We are therefore not bound by the determination of the trial court, and the contract's interpretation is for us a question of law. (*Apra* v. *Aureguy,* 55 Cal.2d 827, 830 [13 Cal.Rptr. 177, 361 P.2d 897].)

▬ It will be observed that while the subject agreement repeatedly refers to itself as an *"option,"* it nevertheless provides for substantial, and immediate and continued, payments on the *"purchase price"* before "exercise" of the "option" is required. This is clearly shown by the contract's

reference to the $150 monthly installments as on account of the "purchase price," and to the "balance of the purchase price" which must be paid upon exercise of the "option."

An option, by definition, gives one the right to purchase property in the future. (See *Transamerica Corp.* v. *Parrington,* 115 Cal.App.2d 346, 352 [252 P.2d 385].) It must necessarily be distinguished from a contract of purchase and sale under which fixed payments in fixed amounts on the purchase price are required. The instrument must be one or the other; it cannot be both. (See *Howard* v. *D. W. Hobson Co.,* 38 Cal.App. 445, 455 [176 P. 175].)

Despite its appellation, in its practical effect the agreement amounts to a contract of purchase and sale with monthly installment payments of $150, under a requirement that the entire balance of the purchase price be paid sometime within the next five years. To be sure the buyer could at any time give up her rights, while avoiding further liability under the agreement, by discontinuing payments and forfeiting those already made; but such a provision is permitted, and is by no means uncommon, in purchase and sale agreements. (See 50 Cal.Jur.2d, Vendor and Purchaser, § 596, pp. 766-767, and the authorities there cited.)

Other relevant authority is summarized in 12 California Jurisprudence 2d, Contracts, section 154, pages 369-370, as follows: "Although the description of an instrument by the parties may bear some weight on the question of its interpretation, the name by which the parties designate their contract is not determinative of its nature. For instance, calling an agreement a lease does not make it such. Reference must be had to the instrument itself, to a reading and consideration of all its terms, conditions, and covenants, to determine its true character. The designation of a contract by an improper term cannot be allowed to take away a substantial right, where all the circumstances attending it are fully detailed. Similarly, the form of the instrument is of little account in determining its true interpretation."

We have concluded that the "Option for Sale and Purchase of Real Property" is not an option to buy, but is instead a contract of purchase and sale of, the property at issue, and that such was the intent of the contracting parties. Accordingly, we need not resolve the question whether an *"option"* from one joint tenant to another, to buy the other's joint tenancy holding, terminates the joint tenancy.

We proceed now to the resolution of what we deem to be the

true issue before us: Does a contract between joint tenants, for the sale by one and purchase by the other of one of the joint tenancy interests, terminate the joint tenancy?

Of considerable assistance to us is the case of *Wardlow* v. *Pozzi*, 170. Cal.App.2d 208 [338 P.2d 564]. There a husband and wife were the joint tenancy owners of land under lease to a third party. In a property settlement agreement attending their divorce action they agreed that " 'each of the parties shall have the option to purchase the other's one-half interest . . . or that the said property shall be sold and the net proceeds divided equally between the said parties.' " (P. 210.) The agreement was unexecuted at the death of the husband. Ensuing litigation raised the question whether the agreement terminated the joint tenancy. Resolving the question affirmatively the appellate court stated (pp. 210-211): "[P]rior to the agreement, neither party had an absolute right to purchase from the other, nor did either have the right to insist that the property be sold and the proceeds divided. Hence by the agreement they surrendered some of those rights; that is, each was bound to sell to the other or both to a third party. And certainly *the right of either party to insist upon a sale, . . . to . . . the other . . . was wholly inconsistent with the continuance of the joint tenancy relationship. Likewise such a provision would appear to negate any intent of the survivor to succeed to the other's interest.*" (Italics added.)

■ *Hiltbrand* v. *Hiltbrand*, 13 Cal.App.2d 330, 333 [56 P.2d 1292], states the general rule which was obviously followed in *Wardlow* v. *Pozzi*, *supra*, as follows: "It is the rule in other jurisdictions that such [joint] tenancy may be terminated either by mutual agreement between the parties or *by any conduct or course of dealing sufficient to indicate that all parties have mutually treated the joint tenancy as terminated. . . .*" (Italics added.) Other California cases applying this rule are *Clark* v. *Carter*, 265 Cal. App.2d 291, 294 [70 Cal.Rptr. 923]; *Rich* v. *Silver*, 226 Cal.App.2d 60, 63-64 [37 Cal.Rptr. 749]; *California Trust Co.* v. *Anderson*, 91 Cal.App.2d 832, 836-837 [205 P.2d 1127] and *Swartzbaugh* v. *Sampson*, 11 Cal.App. 2d 451, 455 [54 P.2d 73].

■ As indicated in *Wardlow* v. *Pozzi*, *supra*, an agreement by one joint tenant to sell his interest in the jointly held property to the other is obviously inconsistent with an intent to continue the joint tenancy. To hold otherwise in the instant case we would be obliged to find from the agreement an intent—that in the event of the buyer's death after substantial payments on the purchase price but before the final payment and deed delivery—the buyer's payments would be forfeited to the seller who would retain his own joint tenancy interest while succeeding to that of the deceased

buyer. Such an intent may not reasonably be inferred, nor will such an inequitable result be implied by law or equity.

For the reasons stated the judgment must be affirmed.

Affirmed.

Molinari, P. J., and Weinberger, J.,* concurred.

A petition for a rehearing was denied January 22, 1973, and appellant's petition for a hearing by the Supreme Court was denied February 22, 1973.

*Assigned by the Chairman of the Judicial Council.