[No. D010611. Fourth Dist., Div. One. Dec. 18, 1990.]

Estate of ALAN WILBUR SEIBERT, Deceased.
JUDITH K. SEIBERT, as Personal Representative, etc., Petitioner and Respondent, v.
JEANNE F. SEIBERT, Objector and Appellant.

COUNSEL

Borgerding, Peterson, Burnell, Glauser, Waters & Allred and Chris J. Allred for Objector and Appellant.

Showley & Thompson and Kent C. Thompson for Petitioner and Respondent.

OPINION

**FROEHLICH, J.**—Jeanne F. Seibert (appellant) was the first wife of Alan Wilber Seibert (decedent). Judith K. Seibert (respondent) was decedent's second wife. During their marriage appellant and decedent held a residence and real property (the property) in joint tenancy.

On July 21, 1983, after the dissolution of the marriage of appellant and decedent, by a stipulated order after trial, the superior court ordered that the property be listed for sale and the proceeds divided equally between appellant and decedent. The property did not sell during decedent's lifetime.

In 1984 decedent married respondent, who later that year moved to Texas. Subsequently, decedent also went to Texas. After decedent's death on July 6, 1986, respondent was appointed administrator of his estate in domiciliary proceedings in a Texas probate court. She was also appointed personal representative of decedent's estate in an ancillary proceeding filed in San Diego County.

On August 5, 1986, appellant caused to be recorded an affidavit-death of joint tenant form in which she stated her joint tenant in the property had died. On October 23, 1987, she recorded a quitclaim deed transferring her interest in the property to herself as trustee and her successors in trust under the Jeanne F. Seibert trust. In May 1988 the property was sold for a net price of $202,877.

Respondent, as personal representative of decedent's estate, filed a petition for order directing transfer of property. The petition alleged that although record title was held between decedent and appellant as joint tenants, the joint tenancy terminated as a direct result of the stipulated order filed in the 1983 dissolution proceeding. Therefore, decedent's estate and appellant held title to the property as tenants in common although the public record was not adjusted to reflect the change in title.

After a hearing on May 2, 1989, the superior court found that the stipulated order entered during the dissolution proceedings terminated the joint tenancy and that thereafter decedent and appellant held title as tenants in common. The court ruled that a written instrument would have to have been executed by the parties in order to create a joint tenancy interest and ordered appellant to deliver the estate's one-half interest in the proceeds of the sale of the property to respondent as personal representative of the estate.

## CONTENTION

Appellant contends the trial court erred in refusing to allow her to present evidence of decedent's representations to her and to others that a writing was not necessary to create joint tenancy interest in the property, and therefore decedent's estate should be estopped from asserting the writing requirement.

Appellant asserts that before decedent's death he and she agreed not to sell the property or divide the proceeds, thus agreeing in effect not to sever the joint tenancy. She contends the estate should be estopped from relying on the writing requirement because she relied on actions and statements of decedent which indicated the property was still held in joint tenancy. She maintains the trial court should have allowed her to present evidence of decedent's representations to her, their children and others that the deed of record could be left as it was and no other written instrument was necessary to validate the joint tenancy interest. She claims she also should have been allowed to present evidence of her alleged substantial injury and change of position resulting from her efforts to care for decedent in Texas until his death and her failure to seek legal counsel to determine if she needed documentation of decedent's intent that the property be in joint tenancy.

## DISCUSSION

The joint tenancy here was terminated by virtue of the agreement, reduced to court order, providing for sale and division of proceeds. Such provision, being inconsistent with at least one of the "four essential unities" of a joint tenancy (succession to the whole upon death of a joint tenant), destroyed the joint tenancy, and the resultant ownership was tenancy in common. (*Estate of Asvitt* (1979) 92 Cal.App.3d 348, 351 [154 Cal.Rptr. 713]; *Estate of Gebert* (1979) 95 Cal.App.3d 370, 375-376 [157 Cal.Rptr. 46].) We do not confront problems of the statute of frauds in this termination of joint tenancy, because the instrument of termination is a court order reflecting an in-court stipulation by the parties. Since we deal here only with the initial parties to the transaction, rather than strangers or bona fide

purchasers, the factor of the joint tenancy deed remaining of record is of no moment. The joint tenancy was terminated.

■ Apparently acknowledging this conclusion, appellant contends that some principle of estoppel should operate to preclude the estate from relying upon the status of tenancy in common. The trial court's judgment can be affirmed only if we conclude that the evidence cited by appellant in her offer of proof would under no circumstance constitute an estoppel precluding the estate from denying the existence of the oral agreement. We labor to fit this evidence into some recognized category of equitable estoppel; failing, we affirm.

The most facile remedy for appellant would be a finding that she and the decedent had rescinded their dissolution agreement. (See *In re Marriage of Maxfield* (1983) 142 Cal.App.3d 755, 758 [191 Cal.Rptr. 267].) We assume, without authority, that even though a joint tenancy might be terminated by a stipulated court decree, it could "spring" back to life if the decree were to be vacated. Unfortunately, these are not our facts. A reconciliation of the parties might have created evidence pointing to an intention to rescind the stipulated order. (See *In re Marriage of Broderick* (1989) 209 Cal.App.3d 489, 497 [257 Cal.Rptr. 397].) We do not, however, have a reconciliation here; indeed, we have quite the opposite in terms of a final dissolution and a *remarriage*. Whatever may have been intended by the parties, it did not embrace a rescission of the prior stipulated order.

We might look favorably upon appellant's offer of proof were this a case involving a promise to devise realty. Certainly there are cases establishing part performance and detrimental reliance as grounds for enforcing an oral agreement to provide by way of will. (See 35 Cal.Jur.3d, Frauds, Statute of, § 89, pp. 126-127.)[1] This is not, however, an alleged agreement to devise realty. It is an alleged commitment to abide by the terms of a superseded joint tenancy deed. Essentially, it is an alleged oral agreement to recreate a joint tenancy.

We have looked, and we find no cases recognizing estoppel as grounds for validating an unperformed agreement to create a joint tenancy. Joint tenancy is a unique combination of rights to real property which can *only* be created by an instrument in writing. (Civ. Code, § 683.) While there are numerous cases stating the proposition that a joint tenancy in realty cannot

---

[1] The former statute of frauds provision regarding an agreement to leave property by will was eliminated from Civil Code section 1624 in 1983. Probate Code section 150 (revised in 1983) provides that a contract to make a will made after December 31, 1984, may be proved by provisions in the will stating material provisions of the contract, or by express reference in the will to a contract and extrinsic evidence proving its terms, or by a signed writing.

be created by oral agreement (see, e.g., *Donovan* v. *Donovan* (1963) 223 Cal.App.2d 691, 697 [36 Cal.Rptr. 225]; *Allen* v. *Samuels* (1962) 204 Cal.App.2d 710, 715 [22 Cal.Rptr. 528]; *Estate of Horn* (1951) 102 Cal.App.2d 635, 639 [228 P.2d 99]; *Estate of Harris* (1937) 9 Cal.2d 649, 662 [72 P.2d 873]), there is no authority that such oral agreement can nevertheless be enforced in equity under estoppel principles. The unique nature of a joint tenancy, it seems, is such as to constitute its writing requirement a more formidable "statute of frauds" than the ordinary requirement pertaining to contracts having to do with real property. (See examples of avoidance of the statute in ordinary cases in 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, §§ 319-325, pp. 300-306.)

Even assuming, however, that facts could be conjured which *would* permit enforcement of a joint tenancy commitment through estoppel, we would nevertheless affirm the trial court in this case. Appellant would be required to demonstrate not only that she relied upon the alleged promise from the decedent, but that she entered into acts or performance which was "not only referable, but unequivocably referable, to the particular oral agreement sought to be enforced." (35 Cal.Jur.3d, *supra*, § 85, pp. 121-122.) Here appellant's strongest evidence consists not of an act, but of *failure* to act: reliance upon the decedent's promise in terms of *not* seeking a new deed or a modification of the court order. Appellant's reunification with the decedent, and her travel to Texas to care for him shortly before his death, do not point "unequivocably" to reliance on his promise to recreate the joint tenancy. Her concern for his health is just as easily explained by her renewed interest in him generally, resulting from their resumption of a conjugal relationship.

Essentially, this is a case of mistake. Appellant and decedent assumed they did not have to execute a new deed in order to resuscitate their old recorded joint tenancy deed. They were in error. We know of no principle of equitable jurisprudence which is now available to remedy this mistake.

### DISPOSITION

The judgment is affirmed.

Todd, J., concurred.

**WIENER, Acting P. J.,** Dissenting.—At trial appellant wanted to introduce the following evidence.

Shortly after decedent separated from respondent he returned to appellant's residence and lived with her. He continued to do so until he left for Dallas to regain his property and to divorce respondent. Starting in 1985

and continuing up to the date of his death he represented to appellant and their children he intended to return to his family and live in the family residence. He also told her their joint tenancy deed could be left as it was and that no additional documents would be necessary to reflect their agreement that upon his death appellant would have the rights of a surviving joint tenant. Relying upon these representations appellant did not consult counsel and made no effort to determine whether anything further had to be done to formalize their agreement. Finally, because of their renewed interest, appellant went to Texas to care for her former husband when he became ill, continuing to do so until he died on July 6, 1986.

For our purposes we must review these facts in the light most favorable to appellant. In doing so I conclude we should reverse.

I agree the trial court correctly determined the joint tenancy was terminated by the July 1983 order providing for sale and division of the net proceeds of the house. The provisions of the parties' agreement incorporated into the order were inconsistent with the "four essential unities" of a joint tenancy (succession to the whole upon the death of a joint tenant) and accordingly the joint tenancy was destroyed, creating an ownership as tenants in common.

The focus here, however, should be on the events occurring *after* the 1983 order. If the facts can only be viewed as reflecting the parties' agreement to create a joint tenancy in the property they held as tenants in common, we would be required to affirm the judgment. The reason for this is that joint tenancy is a unique combination of rights to real property, created *only* by an instrument in writing. (Civ. Code, § 683.) A joint tenancy in realty cannot be created by oral agreement. (See e.g., *Donovan v. Donovan* (1963) 223 Cal.App.2d 691, 697 [36 Cal.Rptr. 225]; *Allen* v. *Samuels* (1962) 204 Cal.App.2d 710, 715 [22 Cal.Rptr. 528]; *Estate of Horn* (1951) 102 Cal.App.2d 635, 639 [228 P.2d 99]; *Estate of Harris* (1937) 9 Cal.2d 649, 662 [72 P.2d 873].) In my view, however, the facts need not be so narrowly construed.

If there is a reasonable probability the facts can be interpreted as reflecting the parties' agreement to nullify the unexecuted part of their earlier dissolution agreement, the later agreement would not be an effort to *create* a joint tenancy, but rather their mutual decision to *rescind* their respective duties as defined by the earlier court order. As a result of that agreement they would no longer be required to sell their house and divide the proceeds. After rescinding their agreement to sell, they would be restored to their respective positions before their marital dissolution agreement, i.e., they would again hold the property as joint tenants with rights of

survivorship. Accordingly, I think it essential that the facts be examined to determine whether the parties' discussions can be construed as a rescission and if so whether an oral rescission is valid.

California does not impose a heavy burden on those desirous of rescinding a contract. To the contrary, the law is sympathetic to parties who wish to terminate their contractual obligations. Civil Code section 1689, subdivision (a) expressly authorizes parties to rescind an executory bilateral contract by mutual consent. The mutual promises of the parties to forego their rights under the contract is sufficient consideration to support the rescission. (*Jura* v. *Sunshine Biscuits, Inc.* (1953) 118 Cal.App.2d 442, 447 [258 P.2d 90].) The parties are not required to show their consent in writing. They may manifest their agreement orally or through their conduct. (*Treadwell* v. *Nickel* (1924) 194 Cal. 243, 258 [228 P. 25].)

Thus, here no particular formality precluded appellant and her former husband from rescinding their contract to sell their home and divide the proceeds. Although the facts of this case have not been established, appellant's offer of proof constitutes a sufficient factual basis to warrant a hearing. To deprive her of her right to present evidence violates the strong public policy of assuring litigants that their claims will be decided on the merits. Accordingly, I conclude we should reverse the judgment and remand for a trial to permit the appellant to present evidence on her claim.